### CATHERINE A. ADAMS v. STATE.

1. A general owner of goods may be guilty of larceny in stealing such goods from a special owner.
2. The indictment in such case charging the stolen goods as the property of the special owner, is good.
3. To constitute the crime of larceny in such cases, the taking must be felonious.

On error to Quarter Sessions of the county of Union.

Argued at June Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in error, *A. Kalisch.*

For the state, *W. R. Wilson.*

The opinion of the court was delivered by

KNAPP, J.   The plaintiff in error was indicted for grand larceny at the May term of the Union Oyer and Terminer, the indictment charging her with having feloniously stolen certain goods and chattels as the property of Thomas W. Sloan, above the value of $20.   She was tried before the Quarter Sessions of that county, convicted upon the trial, and sentenced to nine months' imprisonment at hard labor.   The property was levied upon by Sloan as the property of Catherine Adams, under an execution which Sloan held, as constable, against her ; the constable allowed the goods to remain at the house of the plaintiff in error, the place of the levy, she being informed of the levy.   Before the time for sale under the execution, the plaintiff in error took and disposed of the goods.

The case comes up on exceptions to the refusal of the court to charge as requested, and upon the charge as made.   The assignments of error present the question whether larceny may be committed by the general owner of property in taking it from one who has the special ownership, without felonious intent in such taking.

It is impossible, under ordinary circumstances, for one to commit larceny in taking possession of his own property, and the general owner of goods, in their lawful possession, has full dominion and control over such goods ; but it seems to be well settled in the law that larceny may be committed by a man stealing his own property, if the taking be *animo furandi,* or with a fraudulent design to charge the bailee with the value of it.   There is a passage found, as early as the time of the Year Books, in which it is said " if I bail to you certain goods to keep, and then retake them feloniously, that I should be hung for it, and yet the property was in me."   This passage is found repeated in all the leading criminal treatises, but

with the addition that the goods be taken with the fraudulent design to charge the bailee with their value. 1 *Hale P. C.* 513 ; 4 *Bl. Com.* 334; 2 *East P. C.* 558; *Ros. Crim. Ev.* 650. As if one delivers his goods to another, as his servant or bailee, and then steals them from such servant or bailee, with a fraudulent intent to charge him with their value, this would be larceny in the owner, although he might. have had their possession through the lawful assertion of his title. On an indictment for larceny against such general owner, the property in the goods stolen may be laid as that of the special owner. The general property of goods levied on by execution is in the debtor, and remains in him until they are sold for the purpose of satisfying the execution ; but the officer who levies acquires a special property in those goods which entitles him to their possession until satisfaction be made of the execution. *Dillenback* v. *Jerome,* 2 *Cow.* 293 ; *Smith* v. *Burtis,* 6 *Johns.* 196. The defendant asked the court to charge the jury that there was a variance in the allegation of property in Sloan, and the proof upon the trial—that, therefore, the defendant should not be convicted. This the court refused to charge, and the evidence is brought here for examination as to the correctness of the court's action in so refusing ; but upon the evidence it appears that Sloan, as already stated, had a special property in the goods, and they were, therefore, properly laid as his goods in the indictment. There was no error in refusing so to charge.

The next exception is as to what the court did charge on the subject of ownership. By the bill of exceptions it appears that the court said that by virtue of the execution and levy "the constable became the owner of the goods levied upon until sold by him, and that if she took the goods, or assisted anyone else in the taking, she is guilty." The part of the charge contained in this bill of exceptions is all we have of it. It would seem to be a sufficient statement of the law defining the rights which the constable acquires in virtue of a levy. It was made by the court in answer to the objection that the true ownership was not alleged in the indictment, and as respects

that question, the instruction of the court was correct.   The constable's ownership was a qualified one, it is true, but it was sufficient to support the averment.   The further statement in that portion of the charge, namely, " that if she took the goods or assisted any one else in taking them, she is guilty," may be subject to more criticism.   It certainly is not a full presentation of the law.   It is not every sort of taking of these goods that would make her criminally liable.   It might have amounted to no more than a trespass or a conversion of the property as against the officer.   The goods were left in her custody by the officer.   As between them she may have been considered as a mere receiptor for the goods, with the right in the officer to deprive her of her possession and assume it himself.   But she not only had their actual custody but was as well the general owner, and could at any time before sale, by paying the judgment, remove the officer's hands entirely from her property.   Now, unless her taking the goods was under such circumstances as in some way to fraudulently charge him with their value, it is difficult to find any recognized rule of criminal law that would hold her answerable for larceny.

This case fails in resemblance to that of *Palmer* v. *People*, 10 *Wend*. 166, in this important feature :   Palmer was convicted of having feloniously stolen property of one Jennings, who, as constable, had levied upon property by virtue of an execution against Palmer.   The goods, by the officer's consent, remained with Palmer, who subsequently sold the shingles and charged the *constable* with having taken them away, and brought suit against him for their value upon that false allegation.   This proof was held sufficient, on the ground that it charged a felonious taking of his own property, with intent to charge the constable with the value of it, bringing the case within the rule above stated as the ground of criminal liability. In this charge is found the broad proposition that any sort of taking or conversion by the general owner of property left in her possession by a constable possessed of the rights which a levy gives him, is a criminal act, and that of larceny.   No

fraudulent or evil design existing in the mind of the defendant is charged or intimated to be a necessary element of guilt. It would not be every taking by a mere stranger of these goods from the possession of the constable that would amount to larceny. A felonious intent would be a requisite ingredient in such crime. A conversion of the goods by a stranger who had been appointed their keeper by a constable, would not have been a crime but a civil wrong merely. To hold the general owner in possession to a severer rule seems to me to savor of illegal severity. I am unable, in the researches I have made, to find any case which warrants the ascription of criminality to such facts. The case of *Rex* v. *Wilkeson, Russ. & Ry.* 471, which goes as far as any other that I have found, presented the features of flagrant fraud on the part of the defendants, who were the real owners of the property, upon either the prosecutors or upon the crown. As to which the judges were divided in opinion. If we are permitted to look into the evidence which is handed us with the record, one can scarcely escape the conclusion that if the rule had been stated to the jury with the proper qualification, they must have failed to find in it evidence of such felonious design as would have raised the offence above that of a mere civil injury.

Whether the judge in other parts of his charge qualified the expressions in the opinion excepted to, we have no means of knowing; the charge is not before us. We have nothing but this pointed statement of his views of the law. We must assume that this embraced his entire instruction to the jury upon the legal requisites of guilt, and it was erroneous in a way that must have prejudiced the defendant in her trial. I think the judgment, for this error, should be reversed and a new trial ordered.